# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 09-221V
Filed: November 18, 2015

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | TO BE PUBLISHED |
| D.B., | * | |
| | * | Special Master Hamilton-Fieldman |
| Petitioner, | * | |
| v. | * | Petitioner's Motion to Vacate Judgment; |
| | * | RCFC 60(b)(6). |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

Diane C. Cooper, Bruce G. Clark & Associates, Port Washington, NY, for Petitioner.
Alexis B. Babcock, United States Department of Justice, Washington, DC, for Respondent.


## RULING DENYING PETITIONER'S MOTION TO VACATE JUDGMENT[1]


On January 9, 2014, the undersigned granted Petitioner's motion to dismiss her Vaccine claim and filed a decision dismissing her claims for lack of sufficient proof to receive compensation under the National Vaccine Injury Compensation Program ("the Program"), 42 U.S.C. §300aa-10, *et seq.*[2] Motion to Dismiss, ECF No. 81. The subsequent judgment was filed on January 14, 2014. Judgment, ECF No. 84. Petitioner filed a Motion to vacate Judgment on January 13, 2015. Motion to Vacate, ECF No. 94.

The Motion to Vacate Judgment was filed pursuant to Rule 60(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Motion to Vacate at 1, ECF No. 94. For the reasons set forth below, the undersigned finds that Petitioner has set forth no valid basis justifying relief from judgment, and Petitioner's Motion to Vacate Judgment is hereby **DENIED.**

---

[1] This Ruling was originally filed on September 4, 2015.  On September 17, 2015, Petitioner moved to have her name redacted in the public version of the Ruling.  On November 12, 2015, the undersigned granted, in part, Petitioner's motion.  In the reissued Ruling, Petitioner's name, as well as her family name, is replaced with her initials; the remainder of the Ruling is unchanged.

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§300aa-10 et seq. (2012). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Vaccine Act ("the Act").

1

## I. PROCEDURAL HISTORY

On April 14, 2009, Meena S. and Sat Dev B. filed a petition on behalf of their minor daughter, D.B. ("Petitioner")[3], for compensation under the Program alleging that their daughter suffered from acute myopathy[4] as a result of receiving the Tetanus booster and Menactra[5] vaccination on April 14, 2006. Petition at 1, April 14, 2009.[6] The case was initially brought *pro se* and assigned to then Chief Special Master Golkiewicz. Petitioner obtained an attorney, Thomas P. Gallagher, who entered his appearance on September 16, 2009. Motion, September 16, 2009. Petitioner filed medical records over the next several months, and she filed a statement of completion on March 18, 2010.[7] Statement of Completion, ECF No. 25.

On May 17, 2010, Respondent filed a Vaccine Rule 4(c) report, asserting that Petitioner's injuries predated the vaccinations she received and thus that Petitioner is not entitled to compensation under the Act. Respondent's Report at 8-12, ECF No. 27. On June 8, 2010, the special master ordered Petitioner to file additional medical records and an expert report. Order, ECF No. 28.

On November 30, 2011, the special master issued an Order to Show Cause after Petitioner's repeated failure to file an expert report supporting her theory of causation; the case appeared stalled. Order to Show Cause at 2, ECF No. 57. Special Master Golkiewicz also noted that Mr. Gallagher's multiple attempts to contact the Petitioner had been unsuccessful. *Id.* Petitioner was informed that "[f]ailure to respond to a court order because petitioners have failed to stay in contact with their attorney is deemed noncompliance with a court order", and that such noncompliance would result in "dismissal of petitioner['s] claim." *Id.* Petitioner filed a response to the Order to Show Cause on January 13, 2012 stating that she had contacted several physicians and pathologists to review her medical records; both a doctor and a pathologist agreed to review the case. Response to Order to Show Cause at 1, ECF No. 58. Petitioner ultimately

---

[3] Petitioner was a minor at the time of the filing, and her parents filed the action on her behalf. Once she reached the age of majority, the caption was amended on April 3, 2013 to name D.B. as the only petitioner. Order, ECF No. 77.

[4] Myopathy is defined as "any disease of a muscle." *Dorland's: Dorland's Illustrated Medical Dictionary,* 1224 (32nd ed. 2012).

[5] The Petition alleged that Petitioner received a Tetanus booster and a Menactra vaccination. Menactra is a brand name for a meningococcal vaccination. *See* http://www.menactra.com/what-is-menactra-vaccine.html.

[6] The Petition reflects that D.B. received a Tetanus booster and Menactra vaccination on April 14, 2006; however, Petitioner's records from Dr. Gargi Gandhi reflect an administration of "Adacel and Menactra" on April 14, 2006. See Pet'r's Ex. 1 at 15-16. Adacel is an active booster immunization for the prevention of tetanus, diphtheria, and pertussis. *See* http://www.adacelvaccine.com/.

[7] Petitioner continued to file additional medical records after filing of the statement of completion. The last medical records was filed on October 3, 2012. Pet'r's Ex. 24, ECF No. 69.

filed an expert report by Dr. John Shane on March 26, 2012. Expert Report, ECF No. 60, Pet'r's Ex. 18.

The case was reassigned to then Chief Special Master Campbell-Smith on May 9, 2012, and Respondent filed her expert report by Dr. Barry Russman on May 29, 2012. Order, ECF No. 62; Expert Report, ECF No. 63, Respondent's ("Resp't") Ex A.

During a July 11, 2012 status conference, the special master discussed the medical records and recently filed expert reports. This was an initial evaluation of the merits of Petitioner's case. Order at 2, ECF No. 64. The special master noted that "the medical records indicate that [D.B.'s] symptoms of muscle weakness and fatigue predated her receipt of the implicated vaccines," *id*. at 1, but that "Dr. Shane, nonetheless, discounts the weakness of which [D.B.] complained prior to the administered vaccines, asserting that [D.B.'s] symptoms appeared abruptly two days after vaccination. *Id.* The special master observed "that on the record as now constituted, Dr. Russman [Respondent's expert] has proposed a theory that is more consistent with the facts of this case," and directed Petitioners to file a supplemental report further discussing the timing "required for the myopathic process to present clinically, irrespective of the inciting agent." *Id.* at 2.

Petitioner filed a supplemental expert report by Dr. Shane on September 12, 2012. Expert Report, Pet'r's Ex. 20, ECF No. 66. Respondent filed a supplemental expert report by Dr. Russman on December 19, 2012. Expert Report, ECF No. 72, Resp't Ex. C. An entitlement hearing was set for May 24, 2013. Scheduling Order, ECF No. 73.

The case was reassigned to the undersigned on March 4, 2013. Order, ECF No. 74. During a status conference on April 15, 2013, Petitioner's counsel indicated that upon a review of the medical records, he did not believe that there was "sufficient evidence to proceed with litigating this case"; he did not believe that Petitioner "[would] be able to meet the preponderan[ce of] evidence" standard required to succeed in the Program. Order, ECF No. 78. No mention was made of any problems with Dr. Shane, indictment or otherwise. Order at 1, ECF No. 78. The entitlement hearing was cancelled and the undersigned ordered Petitioner to file, by late May, either a motion for ruling on the record or a motion requesting dismissal. Order at 1-2, ECF No. 78.

Petitioner filed a Motion for Judgment on the Administrative Record on May 20, 2013; she filed another Motion on December 12, 2013.[8] Motions, ECF Nos. 79 and 80. Dr. Shane's expert reports were never withdrawn. In the first Motion for Judgment on the Administrative Record, Mr. Gallagher stated that "his efforts to find an expert to support [Petitioner's] position failed." Motion at 1, ECF No. 79. On January 9, 2014, prior to issuance of a decision on Petitioner's motion for Judgment on the Administrative Record, Petitioner filed a Motion to Dismiss, stating that she was unable "to prove that she is entitled to compensation in the Vaccine

---

[6] In Petitioner's Motion filed on December 12, 2013, Petitioner mentioned that the second Motion was filed because the undersigned had not filed a decision since the filing of the first Motion for a Judgment on the Record. Motion, ECF 80. The Petitioner also stated that she was only seeking a judgment in this case so that she could file a civil action against the manufacturer and/or administrator of the vaccine. *Id*. For that purpose she did not need the substantive evaluation of the merits of her case that the undersigned had been preparing to issue.

3

Program" based on the facts and science supporting her case. Motion to Dismiss at 1, ECF No. 81. Thereafter, the undersigned issued a decision dismissing the case for insufficient proof on January 9, 2014. Decision, ECF No. 82. Petitioner filed an election to file civil action, wherein she elected to maintain her option of filing a civil action "in lieu of accepting the Judgment entered on January 14, 2014." Election to File Civil Action at 1, ECF No. 85. Petitioner was awarded attorneys' fees and costs in the amount of $35,286.07 on January 27, 2014. Decision, ECF No. 87.

Approximately a year after the judgment dismissing Petitioner's claims, on January 13, 2015, attorney Diane Cooper was substituted for Mr. Gallagher. Motion, ECF No. 93; Notice, January 13, 2015. On the same day, Petitioner filed a Motion to Vacate the January 14, 2014 judgment on the basis of RCFC Rule 60(b)(6), stating that "[her] claim was not decided on the merits through no fault of her own or her prior attorney's but as a direct result of a federal indictment against…her then expert, Dr. John Shane." Motion, ECF No. 94. This was the first mention of Dr. Shane's indictment in the instant case. Petitioner also filed two additional expert reports, supporting documentation, and supporting medical literature with the Motion. Pet'r's Exs. 24-29.

Respondent filed a response objecting to Petitioner's request on January 30, 2015. Response, ECF No. 96. Respondent argues that the indictment of Dr. Shane four years before Petitioner filed Dr. Shane's expert report is not sufficient grounds for relief because Petitioner did not raise the issue during the pendency of the original action and because Dr. Shane was "exonerated" a year prior to the dismissal of the case. Response at 5-6, ECF No. 96. Respondent also asserts that Petitioner chose to dismiss her case in order to potentially pursue a civil action and that this voluntary action on Petitioner's part is also not a valid ground for relief from judgment. *Id.* at 6, 7. Finally, Respondent argues that the newly filed expert reports are not grounds for re-opening the case because they do not constitute an "extraordinary circumstance" as required under RCFC Rule 60(b)(6). *Id.* at 7, 8.

Petitioner filed a reply to Respondent's response to the Motion to Vacate on February 6, 2015. Reply, ECF No. 97. Characterizing the dismissal as involuntary, Petitioner asserts that the case was dismissed due to Dr. Shane's indictment, and not because of "change in litigation strategy" as characterized by Respondent. *Id.* at 4. This matter is now ripe for ruling.

## II. PETITIONER'S MEDICAL HISTORY

Petitioner was thirteen years old when she received the Tetanus booster and Menactra vaccination from Gargi Gandhi, MD ("Dr. Gandhi") during a routine physical examination on April 14, 2006.[9] Pet'r's Ex. 1 at 15-17. During the visit, Petitioner complained of fatigue and occasional weakness. *Id*. Dr. Gandhi attributed these symptoms partially to stress caused by her "recent family situation." *Id*. However, Dr. Gandhi ordered additional tests to rule out other

---

[9] Petitioner's medical history was largely unremarkable prior to her April 14, 2006 visit to Dr. Gandhi when she received the Adacel and Menactra vaccinations. Petitioner had a history of asthma, but was otherwise in good health. *See, e.g.*, Pet'r's Ex. 11 at 19, 23.

possible causes of Petitioner's symptoms, the results of which were abnormal; Petitioner had "elevated liver enzymes".[10] Pet'r's Ex. 1 at 12.

At the follow-up visit on April 26, 2006, Petitioner reported having fever of 103 degrees for three to four days. Pet'r's Ex. 11 at 4. She reported feeling weak at the visit even though the fever had resolved. *Id*. Petitioner also reporting having "trouble lifting [her] arms and getting out of bed." *Id*. Prior to the onset of the weakness, Petitioner was an "avid athlete," but reported not being able to "do any push-ups or sit-ups and [being] unable to perform in gym class" at the time of the visit. *Id*. In a musculoskeletal exam, Petitioner was "unable to lift arms passively to 90 deg[rees], unable to sit up from supine position, [and] unable to stoop and recover." *Id*. at 5. The following was noted by Dr. Gandhi: "low muscle bulk in arms and legs but symmetric; walk unassisted, slow to get up from seated position but able to do [it] alone." *Id*.

Petitioner's symptoms continued to worsen; as of April 14, 2009, Petitioner was wheelchair bound and "barely able to move her hand and unable to lift her legs or arms." Pet'r's Ex. 3 at 29.  Cognitively, she is appears normal. *Id*. at 28.

Petitioner went on to see a number of physicians and specialists, but no definite diagnosis had been made as of the date of dismissal; she seems to have a myopathy. Pet'r's Ex. 24 at 1; Pet'r's Ex. 12 at 1, 11; Pet'r's Ex. 4 at 11-12. Petitioner's "[f]amily history is negative for any relatives with neuromuscular disorders or muscular dystrophy"; and the results of all genetic tests were normal. Pet'r's Ex. 4 at 29. Some of Petitioner's physicians made a vague temporal connection between her symptoms and her vaccinations, but no causal connection was ever made. *See generally* Pet'r's Ex. 7 at 4 (Dr. Pascual); Pet'r's Ex. 9 at 257 (Dr. Sipro); Pet'r's Ex. 9 at 192 (Dr. Moon).

### III. THE APPLICABLE LEGAL STANDARDS

The Vaccine Rules of the United States Court of Federal Claims, which are found at Appendix B to the RCFC, govern all Program proceedings. Vaccine Rule 1(a). If a matter is not specifically addressed by the Vaccine Rules, the special master may apply the RCFC, so long as those rules are not inconsistent with the Vaccine Rules and the purpose of the Vaccine Act. Vaccine Rule 1(b)-(c).

Under Vaccine Rule 36, a party may seek relief from judgment pursuant to Rule 60 of the RCFC ("RCFC 60"). RCFC 60 is identical to Rule 60 of the Federal Rules of Civil Procedure ("Rule 60"). *Blake v. Sec'y of Health & Human Servs.,* No. 03-31V, 2014 WL 7331948, at *4 (Fed. Cl. Spec. Mstr. Sept. 11, 2014). Thus, cases involving Rule 60 are useful in interpreting the meaning and intent of RCFC 60. *Id.*

A motion for relief under RCFC 60(b) "seeks to set aside a final decision and it is incumbent upon the motion-filer to demonstrate that he or she is entitled to relief"; it "is not a pleading, like a complaint, in which the factual allegation[s] are presumed true." *Kennedy v. Sec'y of Health & Human Servs.,* 99 Fed. Cl. 535, 550 (2011).

---

[10] The only result specifically discussed in the doctor's notes was abnormal liver enzymes.

In determining whether a judgment should be set aside, "the need for finality of judgments" must be balanced against "the importance of ensuring that litigants have a full and fair opportunity to litigate." *Kennedy*, 99 Fed. Cl. at 540-41 (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010)); *see also Bridgham v. Sec'y of Health & Human Servs.*, 33 Fed. Cl. 101, 104 (1995). In *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981), the court listed eight factors that should be considered when ruling on a Rule 60(b) motion:

> (1) [t]hat final judgments should not be lightly disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Seven Elves*, 635 F.2d at 402 (citing *United States v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962) (citation omitted)).

Relief from judgment under RCFC 60(b) can be obtained for the specific reasons listed in RCFC 60(b) (1)-(5) or pursuant to the "catch-all" provision of RCFC 60(b) (6), which allows relief "for any other reason." RCFC 60(b) (6). The catch-all provision of RCFC 60(b) (6) allows a judgment to be vacated "whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949). However, the catch-all provision should apply "only when the basis for relief does not fall within any of the other subsections of Rule 60(b)(6)." *CNA Corp v. United States*, 83 Fed. Cl. 1, 8 (2008) (*quoting Fiskars, Inc. V. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002)). Relief from a final judgment pursuant to RCFC 60(b)(6) requires a showing of exceptional or extraordinary circumstances. *Greenbrier v. United States*, 75 Fed. Cl. 637 (2007) (citing *Ackermann v. United States,* 340 U.S. 193 (1950) and *Louisville Bedding Co. v. Pillowtex Corp.,* 455 F.3d 1377, 1380 (Fed. Cir. 2006)). This strict interpretation of the broad text of RCFC 60(b)(6) is necessary to preserve the "finality of judgments." *Kennedy*, 99 Fed. Cl. at 548. To construe the rule otherwise would let the "exception swallow the rule." *Id*. at 541 (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010)).

When determining if extraordinary circumstances exist, the court must consider the level of fault which can be attributed to the individual seeking relief. "In the vast majority of cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault...." *CNA Corp.*, 83 Fed. Cl. at 8 (citing *Moore's Federal Practice* § 60.48[3][b] (3d. 2008). "There must be an end to litigation someday, and free, calculated, deliberate choices are not be relieved from." *See Ackermann,* 340 U.S. at 211-12 (1950). "[T]he impact of tactical litigation decisions that prove to be unsuccessful" is not included among the "exceptional or extraordinary circumstances" as required under RCFC 60(b)(6). *Greenbrier v. United States*, 75

6

Fed. Cl. 637, 641 (2007). A motion pursuant to Rule 60 is "not available simply to relitigate a case." *Wagstaff v. United States*, 595 Fed. Appx. 975, 978 (Fed. Cir. 2014)

In considering Rule 60(b) motions, courts have also weighed the merits of the underlying claim in determining whether relief from judgment is appropriate. *See, e.g., Curtis v. United States*, 61 Fed. Cl. 511, 512 (2004). However, "a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." *Id.* (*quoting Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992).

## IV. EVALUATING PETITIONER'S MOTION

### A. Petitioner has failed to establish existence of "extraordinary circumstance" under RCFC 60(b)(6)

#### 1. Dr. Shane's indictment is not an "extraordinary circumstance" under RCFC 60(b)(6)

Dr. John Shane was indicted by a grand jury in 2008 for his involvement in an alleged will forgery. The indictment was subsequently lifted and the will was upheld in August 2012. Response at 5-6, ECF No. 96 (*citing* Riley Yates, *Wills John Karoly filed for brother's estate are upheld in court*, The Morning Call (August 14, 2012), http://articles.mcall.com/2012-08-14/news/mc-northampton-john-karoly-will-dispute-20120814_1_kim-luciano-joanne-billman-billman-and-candice-pamerleau).

Petitioner claims that the indictment of her expert was the sole reason for the dismissal of her case. Motion to Vacate at 1, ECF No. 94. She contends that the indictment of Dr. Shane forced her to rescind Dr. Shane's expert reports since she could not in good faith have had Dr. Shane testify at the hearing. Reply at 2, 6, ECF No. 97. Thus, she argues that her motion for dismissal was involuntary. *Id*. at 4; Motion to Vacate at 1, ECF No. 94.

Petitioner alleges that Mr. Gallagher discovered Dr. Shane's indictment "essentially on the eve of trial", which was scheduled to take place on May 24, 2013. Reply at 6, ECF No. 97. However, nowhere does Petitioner mention that Dr. Shane was indicted four years prior to his reports being filed with the court, nor that he was exonerated at least a year prior to the dismissal of Petitioner's case. *See* Response at 5-6, ECF No. 96.

The undersigned notes that Petitioner never referenced Dr. Shane's indictment as a reason for requesting dismissal. *See* Motion for Judgment on Administrative Record, ECF Nos. 79, 80. Petitioner also did not inform the Court of the problem with Dr. Shane as grounds for continuing the hearing for purposes of obtaining a different expert's opinion. Rather, Petitioner's then-attorney, Mr. Gallagher, cited a lack of evidence, both scientific and factual, to sustain the case as the reason for Petitioner's requested dismissal. Motion to Dismiss at 1, ECF No. 81; *see also* Order, ECF No. 78 (counsel stated there was not "sufficient evidence to proceed with litigating this case.") Petitioner also cited her intention to file in civil court if her motion to dismiss was granted. *Id*. at 2. The first mention of Dr. Shane's indictment was in Petitioner's Motion to Vacate Judgment. Motion, ECF No. 94.

In addition, contrary to Petitioner's assertion, Dr. Shane's expert reports were never rescinded. In fact, the undersigned was in the process of considering the reports in the course of writing a ruling on the record. In the interim, Petitioner decided to seek a dismissal for insufficient proof, "acknowledging that insufficient evidence exists to demonstrate entitlement to compensation." Motion to Dismiss, ECF No. 81.

While Petitioner had no control over her expert's indictment, the fact of that indictment under the totality of the circumstances discussed herein does not constitute an extraordinary circumstance under RCFC 60(b)(6).

### 2. Change in litigation strategy is not an "extraordinary circumstance" under RCFC 60(b)(6)

In her motion to dismiss, Petitioner cited the lack of evidence as a reason for requesting dismissal. Motion to Dismiss at 1, ECF No. 81. That motion was granted on January 9, 2014, and judgment was entered on January 14, 2014. Judgment, ECF No. 84. Petitioner asked for leave to file in civil court which the undersigned granted. Election to File Civil Action at 1, ECF No. 85. Following the dismissal, Petitioner was granted $35,286.07 in attorney fees and costs. Decision, ECF No. 87. On January 13, 2015, Petitioner filed this Motion to Vacate Judgment. Motion, ECF No. 97.

A motion under Rule 60 is not available simply to relitigate a case—it is an avenue to secure "extraordinary relief ... which may be granted only in exceptional circumstances." *Wagstaff*, 595 Fed. Appx. at 978 (citations omitted). Petitioner made a conscious, deliberate, and voluntary decision to ask for dismissal of her case in order to bring it to an alternate jurisdiction. Motion, ECF No. 81. Petitioner's request for leave to file in civil court and to not have the decision of this court binding on courts of other jurisdictions, for a dismissal in order to file that civil action, was all a well thought-out legal strategy. Such deliberate and conscious choice is not to be dismissed just because it was unsuccessful, no matter how compelling the reasons for the change. *Greenbrier*, 75 Fed. Cl. at 641. "There must be an end to litigation someday, and free, calculated, deliberate choices are not be relieved from." *Ackermann*, 340 U.S. at 211-12.

Even assuming that the dismissal was involuntary, Petitioner still made a deliberate, conscious choice not to ask for review of the dismissal or appeal the judgment. "It is well settled that Rule 60(b)(6) 'cannot be employed to toll, extend, or waive the time period to appeal.'" *Blake*, 2014 WL 7331948, at *5 (citing *Widdoss v. Sec'y of Health & Human Servs.*, 989 F.2d 1170, 1178 (Fed. Cir. 1993)); *Waller v. Sec'y of Health & Human Servs.*, 76 Fed. Cl. 321, 324-25 (2005); *Patton v. Sec'y of Health & Human Servs.*, 25 F.3d 1021, 1028-29 (Fed. Cir.1994). Petitioner cannot now avoid the consequences of such tactical choices made on the Petitioner's part.

The undersigned finds that Petitioner's motion to vacate judgment is an attempt to remedy the results of her failed litigation strategy, and that such an attempt is not an "extraordinary circumstance" under RCFC 60(b)(6).

### B. Petitioner had an opportunity to present the merits of her case before she chose dismissal

"[L]iberal construction of Rule 60(b) is appropriate in cases where the policy favoring the resolution of cases on their merits is at stake --- i.e. in cases where the judgment from which relief is sought is either a default judgment or a dismissal for failure to prosecute." *Mora v. Sec'y of Health & Human Servs.*, 2015 WL 4455027, at *10 (Fed. Cl. June 30, 2015)(citation omitted). Thus, where an "attorney has affirmatively misled the client, and/or effectively abandoned the client so that the attorney is no longer acting as the client's agent," a motion to vacate judgment will be granted. *Id. See also Freeman v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 280 (1996) (Rule 60(b) (6) motion to vacate granted where counsel's gross negligence resulted in default judgment against petitioners); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1171-72 (9th Cir. 2002) (granting motion to vacate pursuant to Rule 60(b)(6) where plaintiff's counsel failed to reply to court orders multiple times, resulting in dismissal for failure to prosecute.). By contrast, where a petitioner voluntarily moves to dismiss her case in order to file in civil court, a motion to reopen pursuant to Rule 60(b) (6) will be denied. *Mora*, 2015 WL 4455027, at *10.

The original proceedings of the instant case lasted for over four years, with Petitioner given ample opportunity to make her case on the merits. She was given multiple extensions to procure and file favorable expert reports. *See, e.g.,* Order granting Motion for Extension of Time, ECF No. 36; Scheduling Order, ECF No. 43 (stating that Petitioner shall file expert report by no later than May 2, 2011); Scheduling Order, ECF No. 46 (ordering Petitioner's expert report to be filed by July 1, 2011); Status Report Order, ECF No. 55 (explaining that Petitioner shall file a status report informing the court of "progress in obtaining a supportive medical opinion" by November 4, 2011); Order to Show Cause, ECF No. 57; Scheduling Order, ECF No. 59 (stating that Petitioner's expert report is due by March 26, 2012). Various status conferences were held, including one in which the merits of Petitioner's case as presented in Dr. Shane's expert report were discussed. Scheduling Order, ECF No.64. An entitlement hearing was set before Petitioner decided to opt out of the Vaccine Program. Order, ECF No. 73.

The undersigned finds that Petitioner was given full opportunity to try her case on merits, and relief from the dismissal she sought voluntarily through RCFC 60(b) is inappropriate.

### C. Petitioner lacks meritorious claim at the time of dismissal

Petitioner claims that she now has sufficient medical evidence to prove that her injuries were caused by her vaccination. Motion to Vacate, ECF No. 94. Petitioner provided two new expert reports along with her motion to vacate judgment that she believes supports her claim that her vaccinations were the cause in fact of her injuries. Pet'r's Exs. 24, 26. Petitioner has failed to inform the court of why the evidence of these two expert reports was not available before the dismissal. Petitioner was given an extremely long period of time to find expert reports that support her claim (almost four years), but she was unable to do so despite sending her medical records to several medical specialists. Response to Order to Show Cause at 1, ECF No. 58.

However, since the two new reports are not based on evidence unavailable before the dismissal of her case, the reports are not relevant to the decision on this motion. To the extent a review of the merits is required by factor 5 of *Seven Elves*, therefore, the review of the merits

9

here is based on the medical records and the expert reports that were filed in the Court before the dismissal. *Seven Elves*, 635 F.2d at 396 (discussing that a factor in ruling in a Rule 60(b) Motion is deciding whether judgment was a dismissal with no assessment of merits). After reviewing the record, the undersigned finds that there is a lack of reliable evidence to support Petitioner's claim that the Tetanus booster and Menactra vaccine administered to her on April 14, 2006 caused her acute myopathy. Petition at 1.

    The medical records indicate that Petitioner complained of the symptoms of myopathy, including fatigue and muscle weakness, before the vaccinations were administered. Pet'r's Ex. 1 at 15-17. Petitioner provided no evidence to show that the vaccinations led to worsening of these already existing symptoms. Petitioner failed to explain how her abnormal liver enzymes from the tests done before the vaccinations were normal for her circumstances and not proof of her existing acute myopathy; in his supplemental expert report Dr. Shane, vaguely pointed out a possible connection between strenuous exercise, a viral illness, or stress and the high test results but provided no literature to support his assertions. Pet'r's Ex. 20 at 1. Mere assertions without a scientific or medical basis are not preponderant evidence that meets the causation requirements of the Program. *Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 548 (Fed. Cir. 1994) (holding that a petitioner's theory of causation must be informed by a "sound and reliable medical or scientific explanation.").

    Additionally, the record lacks any medical literature to support Dr. Shane's assertions that these particular vaccines can cause the aforementioned myopathy. His initial report references "persistent immune hepatitis," Pet. Ex. 18 at 2, but Petitioner did not receive a hepatitis vaccine. Dr. Shane asserted in his supplemental report that "there is certainly a relationship between vaccine administration and immune auto responses and there is plenty of literature linking autoimmune reaction to acute myositis resulting from the attack on the viability of muscle tissue by immune complexes," but he again failed to introduce any information into the record that would support this conclusory assertion or to connect the assertion to the specific vaccinations received by Petitioner. Pet'r's Ex. 20 at 1. Respondent's expert noted that "[a] literature review indicates that an acute myopathy, not otherwise specified, has not been associated with a tetanus, diphtheria or meningococcal vaccination." Resp't's Ex. A at 4. The undersigned found no plausible medical theory in the record regarding how the Tetanus booster or Menactra vaccination can cause the myopathy from which Petitioner suffers.

    The undersigned finds that Petitioner's symptoms were present before the administration of the vaccinations, and therefore, that the vaccinations did not cause Petitioner's acute myopathy. This finding is an additional weight on the scale in favor of the finality of judgment and against vacating the judgment pursuant to RCFC 60(b)(6).

**D. It is in the best interest of the judicial system to preserve the finality of judgment**

    Petitioner in her Motion asserts that she did not have a full and fair opportunity to litigate her case because her expert's indictment led to dismissal of her case. Motion to Vacate, ECF No. 94. However, the record clearly indicates that Petitioner was given every opportunity to make her case to the special master. The proceedings lasted for over four years, with Petitioner being given several extensions to file medical records as well as expert reports, before being dismissed on Petitioner's own request. Petitioner was unable to find a reliable medical theory to prove a causal connection between her vaccinations and her injury; by her own account she had contacted multiple physicians and pathologists as potential experts before retaining Dr. Shane. *See*

Response to Order to Show Cause at 1, ECF No. 58; Motion to Dismiss, ECF No. 81. Petitioner herself admitted that she did not think there was enough evidence to receive compensation in the Program. Motion to Dismiss at 1, ECF No. 81. The indictment and subsequent exoneration of Petitioner's expert was not even brought to the undersigned's attention.

Considering the eight factors discussed in *Seven Elves*, the undersigned finds that in this case the need to preserve the finality of judgment outweighs the importance of ensuring that litigants have a full and fair opportunity to litigate. *See Seven Elves,* 635 F.2d at 402. This is not a case of default judgment, but a voluntary dismissal by Petitioner in order to file a civil action. If simply finding new experts to opine under these circumstances was enough, no vaccine case would ever be closed.

## V.  CONCLUSION

Petitioner has provided no basis for relief from judgment under Vaccine Rule 36 and RCFC 60. Petitioner has failed to demonstrate that such "extraordinary circumstances" exist as to justify relief from judgment under RCFC 60(b)(6).

Petitioner's Motion to Vacate the Judgment is **DENIED**.

**IT IS SO ORDERED.**

s/Lisa D. Hamilton-Fieldman<br>
Lisa D. Hamilton-Fieldman<br>
Special Master